Board of Commissioners v. Northwestern Mut. Life. Ins. Co.

"Where it is alleged that the execution of a will was procured by undue influence, the burden is upon the party alleging it to establish that the testator was induced by improper means to dispose of his property differently from what he intended." *Seebrock v. Fedawa,* 30 Neb. 424. See, also, *Boggs v. Boggs,* 62 Neb. 274; *In re Estate of Dovey,* 101 Neb. 11; *In re Estate of Fenstermacher,* 102 Neb. 560; *In re Estate of Kees, ante,* p. 512; 40 Cyc. 1150.

"So also no presumption of undue influence changing the burden of proof arises from the relation of parent and child, unless circumstances indicating actual dominion are shown." 40 Cyc. 1153.

We have carefully examined the testimony adduced and find nothing to indicate any unusual circumstances which would cast the burden of proof upon proponent to show that there was no undue influence exercised. On the other hand, there was the competent testimony of the witnesses to the will, the attending physicians, and others who had known testator in his lifetime, which we think fairly shows that at the time the will was made testator was mentally capable of making a will and was free from undue influence.

Objections have been made to the rulings of the trial court on minor grounds such as usually arise on the trial of causes. These have been carefully considered, but no prejudicial error is found in any of the rulings of the court. and the evidence is found sufficient to sustain the verdict.

The judgment is

AFFIRMED.

---

BOARD OF COMMISSIONERS OF HAMILTON COUNTY, APPELLEE,
v. NORTHWESTERN MUTUAL LIFE INSURANCE COM-
PANY ET AL., APPELLANTS.

FILED MAY 25, 1926.    No. 23986.

1. **Drainage District:** ORGANIZATION: NOTICE TO MORTGAGEES: PRIORITY OF LIENS. The word "landowner" as used in section 1724, Comp. St. 1922, embraces not only the owner of the fee,

VOL. 114]     JANUARY TERM, 1926.          597

Board of Commissioners v. Northwestern Mut. Life. Ins. Co.

but mortgagees, whose mortgages are of record, and notice to them of the proposed organization of a drainage district under article III, ch. 17 (secs. 1718-1743), Comp. St. 1922, must be given before special assessments levied against the land affected can become liens superior to the liens of the mortgagees.

2. ———: ———: ———: ———. When upon the organization of a drainage district under article III, ch. 17, Comp. St. 1922, the notice provided by the statute is not given to the holders of mortgages of record, special assessments made against the land covered by the mortgages will be held subject to the liens of the mortgages.

APPEAL from the district court for Hamilton county: LOVEL S. HASTINGS, JUDGE. *Reversed, with directions.*

*Fred C. Foster, O. K. Perrin, S. M. Kier* and *John A. Whitmore,* for appellants.

*Hainer, Craft, Edgerton & Fraizer, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

MORRISSEY, C. J.

The board of county commissioners of Hamilton county, which under the statute constitutes the drainage board of that county, brought this suit to foreclose a lien arising under a special asesssment levied against a quarter section of land within the "Liebhart-Vetters Drainage District." The holders of mortgage and judgment liens upon the land, as well as the holders of the fee, were made defendants. From a decree establishing plaintiff's lien as superior to all other liens and equities, defendants have appealed.

In plaintiff's petition it is alleged that the district was organized under the provisions of article III, ch. 17 (secs. 1718-1743), Comp. St. 1922, and this allegation is expressly admitted in paragraph two of the answer. Prior to the organization of the district, the owners of the fee title executed and delivered the mortgages now held by the mortgage lien holders, and these mortgages were placed on record. In the decree the court fixed the order of priority of

the defendants' liens, and held them all to be inferior to the lien created by the special assessment.

It is claimed by appellants that the decree is contrary to law. They point out that section 1734, Comp. St. 1922, which constitutes a part of article III, ch. 17, under which the district was organized, does not in express terms make the assessment levied against the property for the improvement a specific lien upon the property. In the brief of appellee it is said that the assessment became a lien under the provisions of section 1687, Comp. St. 1922, as well as under section 1728, Comp. St. 1922. It is also said that if the court reaches the conclusion that the district was organized under article III, ch. 17, Comp. St. 1922, and that that article constitutes a separate and distinct plan of drainage, "then the special assessment becomes taxes or liens upon the land within the district." But as it is alleged in the petition and admitted in the answer that the district was organized under article III, ch. 17, Comp. St. 1922, it is not for the court to make a holding on that question. That is fixed by the pleadings.

By section 5826, Comp. St. 1922, which was enacted in 1921, subsequent to the levy here sought to be enforced, it is provided:

"All special assessments, regularly assessed and levied as provided by law, shall be a lien on the real estate on which assessed, but shall be subject to the general taxes mentioned in the last preceding section."

Appellants contend that the section quoted (5826) is not capable of making an assessment for special improvements a lien upon the land superior to appellants' liens because at the time they acquired their liens the assessments were not a lien, and that section 1724, Comp. St. 1922, under which the district was organized, required that notice of organization, assessment, etc., be given to "all landowners whose lands or lots may be damaged, taken, affected or crossed."

The notice required by statute was not given to any of the appellants, nor was notice waived by any of them.

What is the meaning of the word "landowner" as used in the statute? It has been said that the term "owner" has no exact technical meaning (1 Hare, American Constitutional Law, 355), but as used in the law has generally been treated as including all persons having a claim or interest in the property although the same might fall far short of an absolute ownership. *Lozo v. Sutherland,* 38 Mich. 168. And in dealing with the word "landowner" in a statute giving the right of eminent domain upon payment of damages, it was held that the word embraces not only the owner of the fee, but a lessee for years, and any person who has an interest in the property affected by the condemnation proceedings. *Woodstock Hardwood Spool Mfg. Co. v. Charleston Light and Power Co.,* 84 S. Car. 306.

In *Omaha Bridge & Terminal Co. v. Reed,* 69 Neb. 514, it is held that "A mortgagee is an owner within the meaning of the statute providing for the taking of land under the power of eminent domain." See, also, *Dodge v. Omaha & S. W. R. Co.,* 20 Neb. 276.

In the light of the adjudicated cases, it appears that appellants were "landowners" within the terms of section 1724, Comp. St. 1922. Subsequent sections of the statute provide for a hearing before the board if any party files objections to the report of the appraisers appointed, and grant the right of appeal to "any interested party" to the district court from any order made by the board. This is a valuable right of which appellants may not be deprived. *Elliott v. Wille,* 112 Neb. 86.

The statutory notice not having been given, it follows that the special assessment, in so far as it affects the rights of the mortgage lien holders, is void. See *Rooney v. City of South Sioux City,* 111 Neb. 1.

The judgment of the district court is reversed and the cause remanded, with directions to enter a judgment in accord with this opinion.

REVERSED.